IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| POPSOCKETS LLC, | ) |
| | ) |
| Plaintiff, | ) Case No. 17-cv-08997 |
| | ) |
| v. | ) |
| | ) |
| THE PARTNERSHIPS and | ) |
| UNINCORPORATED ASSOCIATIONS | ) |
| IDENTIFIED ON SCHEDULE "A," | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff PopSockets LLC ("PopSockets" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive, commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of PopSockets' trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of PopSockets' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused PopSockets substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by PopSockets to combat online counterfeiters who trade upon PopSockets' reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including grips, stands and mounts for electronic mobile devices, using counterfeit versions of PopSockets' federally registered trademarks (collectively, the "Counterfeit PopSockets Products"). Defendants create the Defendant Internet Stores by the dozens and design them to appear to be selling genuine PopSockets products, while actually selling Counterfeit PopSockets Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to

conceal both their identities and the full scope and interworking of their counterfeiting operation. PopSockets is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit PopSockets Products over the Internet. PopSockets has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4. Plaintiff PopSockets LLC is a limited liability company organized and existing under the laws of the State of Colorado, having its principal place of business at 3033 Sterling Circle, Boulder, CO 80301.

5. PopSockets designs, manufactures and sells innovative lifestyle products. PopSockets' flagship product, the PopSockets grip-stand, was invented by philosophy professor David Barnett in 2012, with the first PopSockets grip-stand sold on PopSockets.com in 2014. Since then, PopSockets' sales have been growing exponentially – the one millionth PopSocket grip-stand was sold in January 2016.

6. The PopSockets grip-stand is a collapsible grip and stand that provides secure one-hand holding for any mobile device. Its companion product, the PopClip mount, enables PopSockets users to mount their mobile phones on their dashboards, bathroom mirrors, lockers and other surfaces for hands-free viewing. Customizable, re-positionable, and fun to pop, PopSockets grip-stands embody the company's mission to merge function with self-expression.

7. PopSockets won the WIRED "Fueling Innovation" contest sponsored by Mercedes-Benz in 2013. USA Today named PopSockets among "the coolest tech you have to

see" at the Consumer Electronics Show (CES) in Las Vegas in 2015. The Wall Street Journal said that PopSockets products are the best compact smartphone support they have seen. In February 2016, PopSockets was the first recipient of the Fit For Real Life Seal Of Approval as an ergonomically beneficial tool for mobile devices.

8. PopSockets products are distributed and sold to consumers throughout the United States, including in Illinois, through retailers such as Best Buy, Target, T-Mobile, Verizon, and other fine independent retail shops, and via the official PopSockets.com website.

9. PopSockets incorporates a variety of distinctive marks in the design of its various PopSockets products. As a result of its long-standing use, PopSockets owns common law trademark rights in its trademarks. PopSockets has also registered its trademarks with the United States Patent and Trademark Office. PopSockets products typically include at least one of PopSockets' registered trademarks. Often several PopSockets marks are displayed on a single PopSockets product. PopSockets uses its trademarks in connection with the marketing of its PopSockets products, including the following marks which are collectively referred to as the "POPSOCKETS Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 4,572,125 | PopSockets | July 22, 2014 | For: Carrying cases, holders, protective cases and stands featuring power supply connectors, adaptors, speakers and battery charging devices, specially adapted for use with handheld digital electronic devices, namely, phones, sound players, video players in class 009. |
| 4,575,440 | PopSockets (logo) | July 29, 2014 | For: Carrying cases, holders, protective cases and stands featuring power supply connectors, adaptors, speakers and battery |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | charging devices, specially adapted for use with handheld digital electronic devices, namely, phones, sound players, video players in class 009. |
| 4,942,725 | PopClip | April 19, 2016 | For: Stands for handheld digital electronic devices, namely, cell phones equipped with extending attachments in class 009. |
| 5,204,637 | POPSOCKETS | May 16, 2017 | For: Grips, stands, and mounts for handheld electronic devices, namely, smartphones, tablets, cameras, sound players, and video players in class 009. |

10. The above U.S. registrations for the POPSOCKETS Trademarks are valid, subsisting, and in full force and effect. The POPSOCKETS Trademarks have been used exclusively and continuously by PopSockets, and have never been abandoned. The registrations for the POPSOCKETS Trademarks constitute *prima facie* evidence of their validity and of PopSockets' exclusive right to use the POPSOCKETS Trademarks pursuant to 15 U.S.C. § 1057(b). Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the POPSOCKETS Trademarks included in the above table.

11. The POPSOCKETS Trademarks are exclusive to PopSockets, and are displayed extensively on PopSockets products and in PopSockets' marketing and promotional materials. The PopSockets brand has seen exponential growth in the last few years and has been extensively promoted and advertised at great expense. In fact, PopSockets has expended millions of dollars annually in advertising, promoting and marketing featuring the POPSOCKETS Trademarks. PopSockets products have also been the subject of extensive

unsolicited publicity resulting from their high quality and innovative design. Because of these and other factors, the PopSockets name and the POPSOCKETS Trademarks have become well-known throughout the United States.

12. The POPSOCKETS Trademarks are distinctive when applied to the PopSockets products, signifying to the purchaser that the products come from PopSockets and are manufactured to PopSockets' quality standards. The innovative and often unconventional marketing and product design of the PopSockets products have enabled the PopSockets brand to achieve widespread recognition and fame and have made the POPSOCKETS Trademarks well-known. As such, the goodwill associated with the POPSOCKETS Trademarks is of incalculable and inestimable value to PopSockets.

13. PopSockets has operated an e-commerce website since 2014 where it promotes and sells genuine PopSockets products at PopSockets.com. Sales of PopSockets products via the PopSockets.com website represent a significant portion of PopSockets' business. The PopSockets.com website features proprietary content, images and designs exclusive to PopSockets.

14. PopSockets has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the POPSOCKETS Trademarks. As a result, products bearing the POPSOCKETS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from PopSockets. PopSockets is a multi-million dollar operation, and PopSockets products have become among the most popular of their kind in the world.

**The Defendants**

15. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit PopSockets Products to consumers within the United States, including the State of Illinois.

16. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the POPSOCKETS Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for PopSockets to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, PopSockets will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The success of the PopSockets brand has resulted in its significant counterfeiting. Consequently, PopSockets has a worldwide anti-counterfeiting program and regularly investigates suspicious online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, PopSockets has identified many online marketplace listings on platforms such as Amazon, including the Defendant Internet Stores, which were

offering for sale, selling, and importing Counterfeit PopSockets Products to consumers in this Judicial District and throughout the United States. Despite PopSockets' enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

18. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores appear sophisticated and accept payment in U.S. dollars via credit cards through Amazon Pay merchant accounts. The Defendant Internet Stores often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. PopSockets has not licensed or authorized Defendants to use any of the POPSOCKETS Trademarks, and none of the Defendants are authorized retailers of genuine PopSockets products.

19. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are

one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

20. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, Counterfeit PopSockets Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit PopSockets Products were manufactured by and come from a common source and that Defendants are interrelated.

21. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

22. Further, counterfeiters such as Defendants typically operate multiple merchant accounts for accepting payment. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their U.S. based accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

23. Defendants, without any authorization or license from PopSockets, have knowingly and willfully used and continue to use the POPSOCKETS Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit PopSockets Products into the United States and Illinois over the Internet. Each Defendant Internet Store

9

offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit PopSockets Products into the United States, including Illinois.

24. Defendants' unauthorized use of the POPSOCKETS Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit PopSockets Products, including the sale of Counterfeit PopSockets Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming PopSockets.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

25. PopSockets hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 24.

26. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered POPSOCKETS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The POPSOCKETS Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from PopSockets products sold or marketed under the POPSOCKETS Trademarks.

27. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the POPSOCKETS Trademarks without PopSockets' permission.

28. PopSockets is the exclusive owner of the POPSOCKETS Trademarks. PopSockets' United States Registrations for the POPSOCKETS Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of PopSockets' rights in the POPSOCKETS Trademarks, and are willfully infringing and intentionally using

counterfeits of the POPSOCKETS Trademarks. Defendants' willful, intentional and unauthorized use of the POPSOCKETS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit PopSockets Products among the general public.

29. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

30. PopSockets has no adequate remedy at law, and if Defendants' actions are not enjoined, PopSockets will continue to suffer irreparable harm to its reputation and the goodwill of its well-known POPSOCKETS Trademarks.

31. The injuries and damages sustained by PopSockets have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit PopSockets Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

32. PopSockets hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 31.

33. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit PopSockets Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with PopSockets or the origin, sponsorship, or approval of Defendants' Counterfeit PopSockets Products by PopSockets. By using the POPSOCKETS Trademarks on the Counterfeit PopSockets Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit PopSockets Products.

34. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit PopSockets Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

35. PopSockets has no adequate remedy at law and, if Defendants' actions are not enjoined, PopSockets will continue to suffer irreparable harm to its reputation and the goodwill of its PopSockets brand.

## COUNT III
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
(815 ILCS § 510, *et seq.*)

36. PopSockets hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35.

37. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit PopSockets Products as those of PopSockets, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine PopSockets products, representing that their products have PopSockets' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

38. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

39. PopSockets has no adequate remedy at law, and Defendants' conduct has caused PopSockets to suffer damage to its reputation and associated goodwill. Unless enjoined by the

Court, PopSockets will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, PopSockets prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the POPSOCKETS Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine PopSockets product or is not authorized by PopSockets to be sold in connection with the POPSOCKETS Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine PopSockets product or any other product produced by PopSockets, that is not PopSockets' or not produced under the authorization, control, or supervision of PopSockets and approved by PopSockets for sale under the POPSOCKETS Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit PopSockets Products are those sold under the authorization, control or supervision of PopSockets, or are sponsored by, approved by, or otherwise connected with PopSockets;

   d. further infringing the POPSOCKETS Trademarks and damaging PopSockets' goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for PopSockets, nor authorized by PopSockets to be sold or offered for sale, and which bear any of PopSockets' trademarks, including the POPSOCKETS Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon PopSockets' request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the POPSOCKETS Trademarks;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the POPSOCKETS Trademarks; and

c. take all steps necessary to prevent links to the Online Marketplace Accounts identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Online Marketplace Accounts from any search index;

3) That Defendants account for and pay to PopSockets all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

infringement of the POPSOCKETS Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that PopSockets be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the POPSOCKETS Trademarks;

5) That PopSockets be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 14th day of December 2017.  Respectfully submitted,

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Counsel for Plaintiff PopSockets LLC*